CASE 67—PETITION EQUITY—JANUARY 18.

# City of Henderson v. McCullagh.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. TAXATION OF SCHOOL PROPERTY.—Section 3 of article 1, chapter 92, General Statutes (edition of 1873), which exempted from State taxation "real estate and investments devoted to public schools, seminaries, universities, colleges," etc., was not intended to exempt school property in use for private gain merely, and entirely devoid of a public or charitable character; and, therefore, such property is not exempt from municipal taxation under a city charter, enacted while that statute was in force, authorizing the taxation of property "subject to taxation under the revenue laws of this State."

2. EXEMPTIONS FROM TAXATION.—The Legislature can not exempt property from taxation save in consideration of public service, unless it be of a benevolent or charitable character. If the object directly promotes individual interests, and be essentially a private enterprise, then the exemption of its property from taxation by the Legislature is a violation of the Constitution.

JOHN L. DORSEY FOR APPELLANT.

1. Property is not *devoted* to school purposes within the meaning of the statute, so as to exempt it from taxation, by merely teaching a private school in it, or renting it to the teacher of a private school. To authorize the exemption the property must by some act be *set apart* or *consecrated* to the use of the school. (General Statutes (edition of 1873), chapter 92, article 1, section 3.)

2. The Legislature has no authority to grant the exemption asked by appellee. The power of taxation can be exercised only to accomplish *public purposes*, and the test of the right to exempt property is the existence of the right to levy a tax to foster such property. (Trustees of Brooke Academy v. George, 35 Am. Rep., 761; Curtis v. Whipple, 1 Am. Rep., 187; Jenkins v. Anderson, 103 Mass., 94; Loan Association v. Topeka, 20 Wall., 661; Cooley's Const. Limit., 611; Barbour v. Board of Trade, 82 Ky., 647; Lancaster v. Clayton, 9 Ky. Law Rep., 612; Brewer, &c., v. Inhabitants of Brewer, 16 Am. Rep., 400; Morawetz on Private Corporations, sec. 1114.)

The authority of the Legislature to exempt private property was not raised in the case of Naz. Lit. & Ben. Inst. v. Commonwealth, 14 B. M., 267.

City of Henderson v. McCullagh.

A. T. DUDLEY FOR APPELLEE.

1. The adjective "public," as used in the statute, applies only to the noun immediately succeeding it, and, therefore, all seminaries and colleges, whether public or private, are exempt from taxation.

:2. Even if the word "public" was intended to apply to seminaries and colleges, it was not intended to refer alone to institutions supported by public taxation, or to which the public could gain admission without the payment of tuition or compensation, but was used in its more popular sense. (Nazareth Lit: & Ben. Inst. v. Commonwealth, 14 B. M., 266.; Willard v. Pike, 9 Atl. Reporter, 907; Cooley on Taxation, p. 172.)

The history of legislation in this State shows that this is the proper construction of the statute. (Morehead & Brown, ed. of 1834, vol. 2, p. 1373; Revised Stat., vol. 2, chap. 83, sec. 3; Idem, chap. 58, art. 1; Idem, art. 3, p. 105, act to amend art. 1 of chap. 58; Session Acts 1867, vol. 1, p. 323; Session Acts, 1879, vol. 1, p. 262; Gen. Stats., chap. 92, art. 1, sec. 3, p. 709.)

:3. It is not necessary that there should be a perpetual dedication of the property to school purposes in order to authorize the exemption. The commonly accepted meaning of the word "devoted" is "to appropriate to," and it is in this sense it is used in the statute. (Northwestern University v. The People, 22 Am. Rep., 187.)

.JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellee, Mary L. McCullagh, resists the collection of city taxes by the appellant, the City of Henderson, assessed for the years 1884-85 upon certain real estate and personal property, which was used during those years by her for school purposes. Such use began in 1878, and was continued until 1886.

In 1880 the institution was incorporated as the "Henderson Female Seminary" by an act of the Legislature. The appellee was, however, named therein as the owner of the property, and given the absolute control of the school. The charter shows that it was a private educational institution. The appellee was the sole owner, and in control of it. She could select her patrons, and she alone received the benefits. The

tax-payers had no voice in the control of the school. All, or any of them, could be excluded from its benefits at her option. All this is clearly shown by her own testimony. It remained, therefore, after the incorporation, as it was before—essentially a select or private school.

By the charter of the city of Henderson, passed in 1867, it was authorized to "levy a tax of not exceeding one dollar on each one hundred dollars' worth of property, upon all property within the city made *taxable by law for State purposes.*"

So much of the taxes enjoined as were for city purposes generally were levied under this provision of its charter. So much as were for the purpose of paying the interest on its indebtedness were assessed under an act of the Legislature of 1878, directing the annual levy of a tax "upon all the real estate and personal property in said city *subject to taxation under the revenue laws of this State.*"

The school tax portion, and which makes up the balance of the tax enjoined, was levied under the law providing for a system of public schools in the city of Henderson, enacted in 1869, and which authorizes an annual levy "of not exceeding thirty cents on each one hundred dollars' worth of the same property that is *now taxed by the State for common school purposes, situated in said city.*"

The appellee contends that her property was exempt from State taxation under the law in force in 1884–85, and that it was, therefore, by reason of the several statutory provisions above cited, exempt from the tax now in question. This is denied by the appellant, who

also insists, that even if the appellee be correct in this contention, that yet her property is certainly liable for the general city and school tax, because they were levied by virtue of laws enacted prior to the adoption of the General Statutes in 1873, and when the act of May 27, 1865, was in force, which forbade the exemption from taxation of "any lot or parcel of ground in any city or town, other than church property, on which any private school is taught;" and the city school tax law says that the levy is to be upon the property "*now* taxed by the State for common school purposes, situated in said city."

It is unnecessary to determine, however, whether the appellant is right in the last position. We will accept the view most favorable to the appellee, to wit: that the entire tax in question is to be tested by the law in force in 1884-85 relating to exemption from State taxation.

It provides: "The property mentioned in this section shall be exempt from all taxation, viz: * * * the real estate and investments devoted to *public* schools, seminaries, universities, colleges, court-houses, clerk's offices, jails, *public* grave-yards, lunatic, orphan, and deaf and dumb asylums, hospitals, infirmaries, widows and orphans' asylums," &c. * * * (General Statutes (ed. 1883), chapter 92, article 1, section 3.

Let us see if we can arrive at the legislative meaning of this provision. Its extent and scope is the question. It may now be regarded as an accepted rule that there can be no lawful tax unless it be laid for *a public purpose;* that it can only be used in aid of an object within

the governmental purpose, and not to promote enterprises strictly private, and conducing essentially to private gain, even though they may collaterally benefit the public. A mere *private* purpose can not be thus aided. It may be difficult, and often is, to determine what falls within the one class or the other. Courts differ in this respect, but not as to the governing rule. It is also generally conceded that the taxing power should be held to be broad enough to provide liberally for all governmental purposes, such as providing roads that the public may travel; public schools, that the people may become informed as to their governmental duties; for the police of the State and its courts, that crime may be punished and individual right protected, and for all other purposes which are fairly governmental, but no further.

Let us also keep in mind that the exemption of property from taxation is but the imposition of increased taxation upon non-exempt property, and that taxation is the rule, and exemption the exception. The State must live. To do so it must have its taxes. The Legislature can not exempt property from taxation save in consideration of public service, unless it be of a benevolent or charitable character. If the object directly promotes individual interest, and be essentially a private enterprise, then the exemption of its property from taxation by the Legislature would be a constitutional violation, and as such it would be the duty of the courts to declare it invalid. (Lancaster v. Clayton, &c., 86 Ky., 373.)

Unquestionably, the tax-payers of the city of Henderson could not have been taxed for the support of

the appellee's school.  It constituted no part of our system of common education.  It was not open and free to the youth of the city of Henderson who were of proper age and qualification to attend it.  It should not be presumed that the Legislature, in enacting the provision above cited from the General Statutes, have violated the fundamental law.  Such a construction should not be given to it if it be susceptible of any other.  It can hardly be supposed that it intended in effect to take the property of one individual and give it to another by exempting the property of one and adding an increased burden to that of the other; nor is this the necessary or reasonable construction to be given to it.

It is urged that in using the term "seminaries," it must be held to mean those which are private as well as public, because the word "public" is used in connection with the word "schools," and subsequently with the word "grave-yards," showing that where a public institution was intended it was expressly so denominated.  A "seminary" is, however, defined by standard lexicographers to be an "institution of education; a school, academy, college or university, in which young persons are instructed in the several branches of learning which may qualify them for their future employments;" and it can hardly be supposed that the Legislature, after limiting the exemption of school property to "*public* schools," intended by the very next word to extend it to schools both public and private.  Such a construction would be absurd, and the spirit of the statute must govern, even conceding that the letter of it is otherwise.  Not

only so, but if such construction were adopted, it would be saying that the Legislature, instead of looking, as was undoubtedly the case, to the education of all our children and to a system of common education, were favoring the private enterprises of the few at the expense of the many. We are unwilling to adopt such a view of the statute, and, to our minds, it is not only not required, but is not the fair and reasonable one.

The case of the Nazareth Literary and Benevolent Institution v. The Commonwealth, 14 B. M., 214, arose under a different statute. Moreover, it related to an institution of a benevolent or charitable character, and the property belonged to the corporation.

In our opinion the statute upon which the appellee relies for the exemption of her property from taxation was not intended to embrace school property in use for private gain merely, and entirely devoid of a public or charitable character.

The judgment is reversed, with directions to sustain the demurrer to the petition and dismiss the action.