## Walker, et al. v. City of Richmond.

### Same v. Same.

(Decided December 15, 1916.)

### Appeal from Madison Circuit Court.

1. Covenants—Running With the Land.—Where the covenant concerns land, and is one which is capable of being annexed to the estate, and it appears that it was the intention of the parties as expressed in the instrument to so treat it, it will be construed as running with and charging the land thereafter in order to carry out such intention.

2. Municipal Corporations—Powers of.—Being a creature of the state, and continuing its existence under the sovereign will and pleasure, a municipal corporation possesses such powers, and such only, as the state, either expressly or by necessary implication, confers upon it, subject to addition or diminution, at its supreme discretion.

3. Municipal Corporations—No Inherent Powers.—A municipal corporation has no inherent power to exempt from taxation property which it is authorized by its charter to tax.

4. Taxation—Exemptions From.—Powers to exempt from taxation are always to be strictly construed in the interest of the public.

5. Municipal Corporations—Power to Exempt From Taxation.—A municipality, in the absence of express statutory authority, has no power to contract with a citizen for the exemption of his property from assessment for the payment for sidewalk or street improvements.

6. Municipal Corporations—Ultra Vires Acts.—The doctrine of ultra vires when invoked for or against a corporation, should not be

allowed to prevail where it would defeat the ends of justice or work a legal wrong.

7. **Municipal Corporations—Ultra Vires Acts—Duty of Restitution.—** Where a municipal corporation receives the money or property of another under an agreement or duty to account therefor it may be compelled to perform such duty though the transaction was ultra vires. The obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation.

8. **Appeal and Error—Lost Records.—**The loss or absence of unimportant portions of the pleadings and exhibits from the record at the time of the trial in the circuit court, cannot affect the trial upon appeal, when the mislaid or lost portions relate to parties who are not parties to the appeal, and the record fully presents the claims of those parties who appeal.

CHENAULT, WALLACE & WALLACE, JOHN NOE, J. A. SULLIVAN and C. C. WILLIAMS for appellants.

D. M. CHENAULT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing on the first appeal and affirming on second appeal.

These two actions were instituted by the city of Richmond against Mary Jane Walker and the other joint owners of two town lots, one located on Lancaster Avenue and the other on Second street, within the boundary of said city. By the first action the city sought to recover the sum of $685.23, the cost of constructing a pavement, curbing and gutter in front of appellants' lot on Lancaster Avenue; while, by the second action between the same parties, the city sought to recover $416.00, the cost of constructing a pavement, curbing and gutter in front of appellants' lot on Second street.

The appellants' only defense, now pressed, is presented by the following clause of their answer and counterclaim:

"They say that one Joyle J. Walker, their ancestor, was the owner of the land, set out and described in the petition, fronting on what was then known as the Lancaster Pike, and they aver that some time, about 1870-1-2-3; that the said city of Richmond desired to widen the aforesaid pike, and, in order to do so, the city of Richmond agreed with Joyle J. Walker, who was the owner

of the said property and in possession of same, occupying and using it as his homestead, in writing that, if the said Joyle J. Walker would set back his fence, running along the aforesaid highway, a distance of twelve feet, and would surrender the aforesaid twelve feet to the city of Richmond, Kentucky, that the said city would never require the owners of the said property of said Walker to grade, build or maintain a sidewalk along said highway, and that the said city of Richmond would, at its own expense, grade, build and forever maintain a pavement, such as may be necessary, or required by the said city of Richmond. In pursuance of the said agreement, the said Joyle J. Walker did set back his fence about twelve feet along the said highway, the entire width of said property, and relinquished the part cut off from his property, to the said city of Richmond, Kentucky, in pursuance to its aforesaid contract, accepted the said land, and then, about that time, did grade the same for the purpose of putting down a pavement, and did construct a curb along the entire length of said property, and ever since that time they have held possession of the said strip of land, under and by virtue of the aforesaid contract, and not otherwise. The defendants aver that this contract has been recognized by both parties to the same, ever since the making thereof, and the same has been carried out by both parties since then, until about the time of the passage of the ordinance set out in the petition.''

By way of relief, the defendants asked that in case the petition should not be dismissed, that their property be restored to them in its original condition, with the privilege of resetting the fence along the property line, and that they have judgment against the city of Richmond for $1,000.00, which they alleged would be the cost of removing the sidewalk from the strip of land in case of its restoration. The defense applies, however, only to the suit to recover for the construction of the pavement on Lancaster Avenue. The answer does not claim that the agreement made between the city and the defendants' ancestor, related in any way to the property fronting on Second street. The judgment in the Second street case will, therefore, be affirmed without further consideration.

What follows in this opinion will relate to the action concerning the improvement on Lancaster Avenue.

The city contends that the contract of exemption relied upon by defendants is not effective as a defense, for the double reason that it constituted a covenant merely personal to Joyle Walker, and carried no rights to his heirs or successors in title; and further, if it constituted a covenant running with the land, the city had no authority to make it.

The court sustained a demurrer to the counterclaim, and the defendants declining to further plead, a judgment was entered for the plaintiff enforcing the lien. The defendants appeal, and for a reversal they urge three grounds: (1) that the contract between the city and Joyle Walker, as set out in the answer, was a real covenant running with the land, and not a mere personal covenant with their ancestor; (2) that the doctrine of *ultra vires* relied upon by the appellee does not apply to the contract with their ancestor, because it has been completely executed; and, (3) that the circuit court erred in rendering a judgment when some of the papers in the case had been lost and not restored, when the case was tried.

It is conceded by opposing counsel, that if the agreement between Joyle Walker and the city of Richmond with respect to the 12 feet of land, constituted a personal covenant with him, the appellants cannot now rely upon it; but, if that agreement constituted a real covenant running with the land, it survived to the benefit of any subsequent owner of the land, and may be used by way of defense by these defendants.

The test as to what are covenants real, is stated in 7 R. C. L., page 1101, as follows:

"While there is authority to the effect that the first criterion by which to determine whether a given covenant runs with the land or not is the nature and purpose of the covenant, and where this is not decisive, the intent of the parties, as expressed in their deed, will determine the question—a rule in emulation of that stated in Spencer's case—under the modern rules of interpretation the order of inquiry above stated is reversed, and consideration is given, first, as to whether the parties meant to charge the land; and secondly, whether the burden is one that can be imposed consistently with policy and principle. And so, where the covenant concerns land, and is one which is capable of being annexed to the estate, and it appears that it is

the intention of the parties as expressed in the instrument, then it should be construed as running with and charging the land thereafter in order to carry out such intention."

Gibson v. Porter, 12 Ky. L. R. 917, 15 S. W. 871; Flege v. Covington & Cincinnati Elevated Ry. T. & B. Co., 122 Ky. 350, 121 Am. St. Rep. 463; Ferguson v. Worrall, 125 Ky. 618, 9 L. R. A. (N. S.) 1261; Sexauer v. Wilson, 136 Iowa, 357, 14 L. R. A. (N. S.) 185, (annotated), are to the same effect.

In City of Richmond v. Bennett, 33 Ky. L. R. 279, 109 S. W. 904, 16 L. R. A. (N. S.) 548—a case very much like the case at bar—Bennett's grantor had conveyed a strip of land to the city for the consideration, in part, that the city would build a fence in front of the Bennett lot, and would never compel Bennett's grantor to grade, curb or build a pavement on the eastern side of his lot. The city took possession of the strip of land conveyed to it, constructed a board walk along the street next to the property, which, in course of time, became decayed and out of repair. When the city passed an ordinance requiring Bennett, the subsequent purchaser, to build a new sidewalk, he relied by way of defense, upon the contract above referred to. The court, however, held that the agreement with Bennett's grantor was merely a personal exemption and did not go with the land to his grantee. Moreover, the court in that case, expressly declined to pass upon the question of the power of the city to make such a contract exempting one of its citizens from the burdens that were common to all citizens.

Taking the language of the answer as stating the effect of the contract in the case before us, as we must upon demurrer, it clearly states a contract that ran with the land, since it expressly avers that the contract provided that the city would never require the owners of said property to build a sidewalk in front of it, and that the city would forever maintain a pavement there at its own expense.

The contract, therefore, stating a covenant which ran with the land, appellants had the right to rely upon it, provided the city had the right to make the contract; and that brings us to the second question under consideration.

Being a creature of the state, and continuing its existence under the sovereign will and pleasure, a muni-

cipal corporation possesses such powers, and such only, as the state, either expressly or by necessary implication, confers upon it, subject to addition or diminution at its supreme discretion. 28 Cyc. 258; Johnston v. Louisville, 11 Bush 533. It has no inherent power to exempt from taxation property which it is authorized by its charter, to tax. Whiting v. West Point, 88 Va. 905, 15 L. R. A. 860. And, while the legislature may confer the taxing power upon municipalities, it cannot confer any greater power than the state itself possesses, and must observe the restrictions and limitations of the constitution, which prohibit any exemption from taxation save in consideration of public service, unless it be of a benevolent or charitable character. Lancaster v. Clayton, 86 Ky. 373; City of Henderson v. McCullough, 89 Ky. 448; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky. 172; City of Dayton v. Bellevue W. & F. G. L. Co., 119 Ky. 714, 7 A. & E. Ann. Cas. 1012; Shuck v. Lebanon, 24 Ky. L. R. 451, 68 S. W. 843; City of Winchester v. Winchester Water Works Co., 149 Ky. 181; Tarver v. Mayor of Dalton, 134 Ga. 462, 29 L. R. A. (N. S.) 183, (annotated.)

Furthermore it is elementary that powers to exempt from taxation are always to be strictly construed in the interest of the public. Louisville & Portland Canal Co. v. Commonwealth, 7 B. M. 160; Kilgus v. Trustees, &c., 94 Ky. 439; Middlesboro v. New South Brewing & Ice Co., 108 Ky. 351; Continental Tobacco Co. v Louisville, 123 Ky. 173; Dillon's Munic. Corp., 5th Ed., Sec. 1401.

A municipality cannot even compromise a tax suit. Louisville v. Louisville Ry. Co., 111 Ky. 1, 98 Am. St. Rep. 387. In short, it has become recognized as a truism that what a municipality has no power to do, it has not done merely because it tried to do it.

The answer alleges that the contract relied upon was made some time between the years 1870 and 1873. Under chapter 107 of the General Statutes, relating to towns, and then in force, there is no authority given the trustees of a town to make a contract like the one relied upon in the answer. Article 6 of that chapter provides that the trustees of a town may condemn land for street purposes, in certain cases, and prescribes the way in which it may be done; and the law then, as now, authorized the city to require the property holder to pay the expense of building sidewalks in front of his property.

The appellants cite no statute, or other authority, that would authorize the city of Richmond to make the contract relied upon.

That the city of Richmond had no authority to make the contract exempting Walker in the manner claimed, is clear; and no rule of law is better settled than the one which requires those who deal with a municipal corporation to know the extent of its authority, and that they act at their peril unless the authority exists. Craycraft v. Selvage, 10 Bush 696; Dillon's Munic. Corp., 5th Ed., Sec. 777.

In City of Louisville v. Gast, 28 Ky. L. R. 1256, 91 S. W. 251, the city of Louisville contracted with the property holder that if he would dismiss his suit and withdraw his objection to a street assessment, the city would not cause the street to be improved during the term of the then mayor. The contract was observed.

In speaking of this contract, the court said:

"Certain public officials are claimed to have given their personal assurance as authority for the action. That appellee saw proper to rely on that character of assurance may be unfortunate for him. But those who deal with municipal officers must know the extent of their authority, and act at their peril upon less than a statutory power duly exercised."

The authorities are numerous to this effect, and we need only cite a few of them. Trustees of Belleview v. Hohn, 82 Ky. 1; City of Newport v. Schoolfield, 142 Ky. 292; City of Louisville v. Parsons, 150 Ky. 420; Worrell Mfg. Co. v. City of Ashland, 159 Ky. 659, 52 L. R. A. (N. S.) 880.

Appellants insist, however, that even if the contract was *ultra vires* upon the part of the city, it cannot be avoided in this case because the contract was fully performed by Joyle Walker and the city of Richmond; and, since the city of Richmond had received the land contracted for, it will not now be permitted to disavow the contract and keep the land.

This ground is well chosen, since it does not follow that because the city was without authority to make the contract it can refuse to carry it out and retain the benefits it acquired thereunder, at the same time. Where the adverse party to the contract has performed his part thereof, and by such performance the corporation has received something of value, some liability

exists, though the courts are divided as to its nature; many jurisdictions holding that the liability in such a case is on the contract, others that it rests upon the ground of estoppel. But, whatever may be the nature of the liability, a municipality cannot receive the benefits of a transaction and repudiate liability arising out of the same transaction. Page on Contracts, vol. 2, section 1089.

It would indeed be an iniquitous doctrine if a city could make a binding contract exempting the property of one citizen, for all time, from a species of taxation, which every other citizen was required to bear. The very principle under which states and municipalities are authorized to impose public burdens, is, that of equality; they must be equally imposed upon every citizen.

Consequently, where an *ultra vires* contract is made and performed on one side, the other party will not be permitted to enjoy the benefits received but will be required, in a proper action, to account. And, if the consideration received under an *ultra vires* contract cannot be restored, equity will not relieve a municipal corporation from the contract without providing for the restoration of the property received.

The rule is well stated in Albin v. Commonwealth, 128 Ky. 306, as follows:

"In Green's Brice's Ultra Vires, p. 721, the law is thus stated: 'There seems to be no substantial reason whatever for not extending the principle involved to all analogous cases. If liable in one case, why should not a corporation be always liable to refund the money or property of a person which it has obtained improperly and without consideration, or, if unable to return it, to pay for the benefit obtained thereby? To say that a corporation cannot sue or be sued upon an *ultra vires* arrangement is one thing; to say that it may retain the proceeds thereof which have come into its possession without making any compensation whatever to the person from whom it has obtained them is something very different,. and savors very much of an inducement to fraud.' In note A, Id. 729, the author has collated and discussed at great length many cases bearing upon the subject in hand; and it is there said: 'In the United States the defense of *ultra vires* interposed against a contract wholly or. in part executed has very generally

been looked upon with disfavor.' And this principle is upheld by Louisville Tobacco Warehouse Co. v. Stewart, 70 S. W. 285, 24 Ky. Law Rep. 934.''

This rule was recognized · in Croninger v. Bethel Grove C. G. Association, 156 Ky. 362. See also Turner v. Cruzen, 70 Iowa 202; Coker v. Atlanta, K. & N. R. Co., 123 Ga. 492; Kedish v. Garden City E. L. & B. A., 151 Ills. 531.

As was well said in Ohio & M. R. R. Co. v. Mc-Carthy, 96 U. S. 258, the doctrine of *ultra vires,* when invoked for or against a corporation should not be allowed to prevail, where it would defeat the ends of justice or work a legal wrong.

The same rule is well stated in 7 R. C. L., p. 677, as follows:

''Where a corporation receives the money or property of another under an agreement or duty to account therefor it may be compelled to perform such duty though the transaction was *ultra vires.* The obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation.''

If, therefore, the contract alleged should be proved, appellants would be entitled under it to a restoration of the land which their ancestor had conveyed to the city, under and by virtue of the unauthorized contract. To that extent the answer in the first action presented a defense, and the demurrer thereto should have been overruled.

The clerk embodies in his certificate to the record a statement that the corresponding attorney's report, certain exhibits filed by the plaintiff, the general demurrer of the State Bank & Trust Co., to the petition, the answer of the State Bank & Trust Co., a demurrer to the petition in the second suit, and the exhibit, had been lost or mislaid at the time of the trial, and had never been supplied.

Using the contents of the clerk's certificate as the basis of their argument, appellants insist that the judgment should be reversed because these papers, clearly unimportant upon this appeal, were not in the record when the cases were tried in the circuit court. There is no merit in this contention. The question before this court relates to the correctness of the judgment ap-

pealed from, which can hardly be affected by the absence of the report of the corresponding attorney and the pleadings of the parties who are not interested in this appeal. The decision of this appeal turns wholly upon the validity of the contract set up in the answer, in the first action. And, as all the portions of the record necessary to raise and determine that question of law are here, the absence of some minor papers in the second suit is unimportant.

For the error of the circuit court in sustaining the demurrer to appellant's answer and counterclaim in the first action, the judgment in that action is reversed for further proceedings consistent with this opinion; the judgment in the second action is affirmed.