## South Covington & Cincinnati Street Railway Company v. Henkel & Sullivan et al.

## Henkel & Sullivan v. City of Newport.

(Decided March 5, 1929.)

272

BLAINE McLAUGHLIN for the City.

BARBOUR & BASSMAN for Henkel & Sullivan.

MATT HEROLD for Railway Company.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

The Newport & Dayton Street Railway Company was incorporated by an act of the Legislature approved January 25, 1868 (Laws 1867-68, c. 224). The act authorized the company to build and run a street railway with the consent of the city councils of Newport and Dayton from such a point as may be agreed on in the city of Newport to such a point as may be agreed on in Dayton, and to have single or double tracks with all desired turnouts, and appurtenances. In September, 1868, the city of Dayton, by ordinance, gave its consent. The city of Newport by ordinance gave its consent in 1870. The street railway was thereafter constructed over what is known as Front street in the city of Newport, and has since been operated upon it. By an act approved April 26, 1886 (Laws 1885-86, c. 838), the charter of the company was amended, authorizing it to run its line of street railway to a certain point in Cincinnati, and to charge a fare not to exceed 10 cents cash. The act also authorized the company to sell its line of railway or consolidate with any other company or companies. Under the act, on August 1, 1887, it conveyed its franchise and property to the South Covington & Cincinnati Street Railway Company.

On April 14, 1887, and before this sale, the city of Dayton enacted an ordinance authorizing the company to construct and operate a street railway upon what is known as a flat or tram railway track, by cable or electricity, with ground construction or animal power, requiring the company to keep in repair the part of the street occupied by its tracks and two feet on each side thereof. On May 19, 1892, the city of Newport enacted an ordinance authorizing the South Covington & Cincinnati Street Railway Company to change its motive power to electricity and to regulate the tracks and rate of fare thereon. In this ordinance it was provided that the com-

pany should pay to the city treasurer the sum of $250 on the 1st day of May in each year as a license fee, and that this payment should be in lieu of all other license fees, municipal taxes and assessments of every kind whatsoever, including street improvements, excepting only the ad valorem taxes on its real estate and personal property and special taxes on real estate. On June 9, 1910, the city of Newport enacted an ordinance regulating the construction and reconstruction of all public ways, and in this ordinance it was provided that every company maintaining or operating street railways within the limits of the city should pave and improve the streets between the rails of its track and eighteen inches on each side of the track, in such manner as the general council may order and direct. On March 19, 1918, the city adopted an ordinance providing for the reconstruction of Front street, and in this ordinance it was provided that the street railway company should pay for that part of the street between the rails of its tracks and two feet on each side thereof. The work was done under the contract and accepted by the city, and this action was brought by the contractors against the railway company and the city to recover for the work. The court gave judgment in favor of the contractors and against the railway company, and it appeals.

The first question arising in the case is, as to the validity of the ordinance of 1892. While this was nominally an ordinance, it was enacted by the city to take effect upon its acceptance by the railway company, and was accepted by the railway company by formal resolution, and so it was simply a contract between the city and the railway company, by which the railway company agreed to pay so much money annually in lieu of all other taxes and charges, including street assessments. Had the city council power to make such a contract? In Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918E, 1084, the court, collecting many authorities, thus stated the rule:

> "Being a creature of the state, and continuing its existence under the sovereign will and pleasure, a municipal corporation possesses such powers and such only, as the state, either expressly or by necessary implication, confers upon it, subject to addition or diminution at its supreme discretion. 28 Cyc. 258; Johnston v. Louisville, 11 Bush, 533. It has no inherent power to exempt from taxation property

which it is authorized by its charter, to tax. Whiting v. West Point, 88 Va. 905 (14 S. E. 698), 15 L. R. A. 860 (29 Am. St. Rep. 750). And, while the legislature may confer the taxing power upon municipalities, it cannot confer any greater power than the state itself possesses, and must observe the restrictions and limitations of the constitution, which prohibit any exemption from taxation save in consideration of public service, unless it be of a benevolent or charitable character."

This rule applies no less under the former Constitution of the state than under the present Constitution. Purcell v. City of Lexington, 186 Ky. 381, 216 S. W. 599, and cases cited. The contract of 1892 being invalid, the city had the right, at any time, to disregard it, for, being beyond the power of the city council, the contract was void from the beginning.

The appellant also insists that under the ordinance of 1910 it was only required to rebuild eighteen inches on each side of its tracks, but that ordinance plainly was not intended to apply to appellant, for at that time the appellant was paying the city $250 a year, and it was running its railway under a special contract. Both the parties so understood and so treated this ordinance; for the city continued to collect and the railway company continued to pay $250 a year under the contract of 1892. The circuit court held this contract invalid after twenty years under section 164 of the Constitution. The work was done under the ordinance of 1918, which followed the ordinance of 1887, which was unaffected by the contract of 1892, for it was void from the beginning.

The ordinance of 1870 is not in the record, and there is nothing to show that the ordinance of 1887 in any manner conflicted with any right secured by it. Appellant entered and operated under the ordinance of 1887. The franchise of the company was very different then from what it was in 1870. In 1870 it operated horse power cars between Newport and Dayton. In 1887 it had the franchise to run to Cincinnati, to operate with electricity, to run faster, and to collect 10-cent fares and to this the city then consented.

Judgment affirmed.