## Fabric Fire Hose Company v. City of Louisa.

(Decided March 16, 1934.)

408

C. F. SEE, Jr., for appellant.

ELDRED E. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The city of Louisa, Ky., is one of the fifth class (see section 2740 of the 1930 Edition of Carroll's Kentucky Statutes), notwithstanding it was alleged in the petition in this case that it was one of the sixth class.

On July 3, 1929, the appellant and plaintiff below, Fabric Fire Hose Company, a New York corporation, sold to it a quantity of fire-extinguishing hose at the agreed price of $600. The quantity bought was shipped to the city and was accepted by it and was thereafter used by its fire department. Following the shipment and acceptance the city paid plaintiff $100 thereon, leaving a balance due of $500, which it has failed and refused to pay. Plaintiff sought to collect the unpaid amount by this action filed against it (to which we will hereafter refer as defendant) in the Lawrence circuit court; but the court sustained the demurrer filed to plaintiff's petition as amended and dismissed it upon plaintiff declining to plead further, and to reverse that judgment it prosecutes this appeal.

Before the demurrer was acted on and during the interims between the filing of the two amended petitions, an answer and reply were filed, and when the court finally acted, after the filing of the last-amended petition, on the demurrer to it and to the petition as amended by it, and by the first one, such responsive pleadings were in the record, but which fact did not authorize the court to consider any facts stated in them in passing on the demurrer to plaintiff's original and amended pleadings. That rule of practice is too fundamental and too

well established to require discussion or supporting authority. Therefore, in the determination of the appeal we will leave out of consideration any facts alleged in any pleading filed in response to plaintiff's initial pleadings, or any that may have been filed in reply thereto. On the contrary, we will confine our discussion to what is contained in the petition and the two amendments thereto.

The original petition alleged that the contract was in writing, and which is copied therein together with signatures thereto. On the part of the city such signature was and is thus shown: "City of Louisa by C. T. Britton, Committee for buying. C. F. See, Jr." While that of plaintiff was and is: "Fabric Fire Hose Company by D. A. McQuaide, Charleston, West Virginia, box 535." It will thus be seen that the signature of the city to the contract purports on its face to have been made by one filling the place of "Committee for buying" and is sufficient to raise the presumption that such a place had been created and that the one who signed the contract for and on behalf of the city (C. L. Britton) had been duly elected or appointed to that place. In other words, the contract purports on its face to have been duly executed for and on behalf of defendant, and the burden was on it to allege facts (and prove them if denied) to overcome such presumption.

The answer filed by the city purported to do that, but, as we have seen, that pleading may not be taken into consideration in determining the demurrer to the petition. In fact, the court overruled the first demurrer filed to that pleading, but later sustained one filed to the second amended petition and to it as so amended. That pleading (second amended petition) set out facts which plaintiff's attorney alleged constituted a ratification of the contract if it should be found by the court to have been improperly executed; but it expressly relied on the original petition and the validity of the contract *as executed*. The alleged ratifying acts were therefore in avoidance of a defective execution of the contract, if the court should finally so determine. Such ratifying acts were that the contract was executed at a regular meeting of the council under the express direction of its members, including the mayor of the city, whereby Britton signed the contract as it was executed. But, as we have stated, those facts were not inconsistent with a prior authorization of record appointing Britton "Com-

mittee for buying" for the city and as embracing the articles here purchased, since cities of the fifth class are expressly authorized by section 3637-1 of the 1930 Edition of Carroll's Kentucky Statutes "to contract for supplying the city with water and lights," and which includes power and authority to maintain a fire department with necessary equipment to extinguish fires. Therefore, the much-mooted and extensively discussed question in both text and reported opinions, as to whether or not a municipality has exceeded its authority in making the particular contract, is eliminated from the case. But it might be stated in passing that contracts entered into by a municipality for which its charter furnishes neither express nor necessarily implied authority are ultra vires and void and may not be ratified in any manner so as to give them legal vitality. Neither is the question presented (since it is confined to the allegations of the petition as amended) as to whether or not the contract here involved was executed according to any prescribed form by the charter of the city, or some previously adopted ordinance by it, because of the presumption arising from the face of the contract to which we have referred, and which, as we have said, would have to be met by a responsive pleading and proof if its allegations were denied. However, our examination of charters of cities of the fifth class in this commonwealth leaves it, to say the least of it, exceedingly doubtful if there is any particular prescribed form or method by which such contracts may be entered into by cities of the fifth class. It is true that section 3636 prescribes that "no resolution or order for the payment of money shall be passed at any other time than a regular meeting," and then points out how such resolution or order shall be passed; but it is by no means clear that such language would embrace the *execution* of a contract and require it to be so made, since the language relates to only "payment of money" and which would, doubtless, comprehend the payment of plaintiff's debt at the time the city attempted to make it. But, as we have pointed out, that question is not before us, and it is therefore reserved.

In briefs the question whether, if at all, a municipality may become estopped or may ratify a contract which it possessed authority to make (but which was not done in accordance with the prescribed form) and which, of course, is not one purely ultra vires, but only one

*irregularly* and *improperly* executed, is argued, but it will not be determined; although in passing it might not be improper to say that if the contract sued on was executed in the manner claimed by the city (and which information we, of course, obtain from pleadings following the petition and amendments thereto), it creates a most appealing one for the court to sustain the relied on estoppel or ratification unless prevented by some positive rule of law. The pleaded acts of ratification and estoppel present a case radically different from those in which we have held that a municipality would not be estopped, nor would it be bound by ratification because of an appropriation of the benefits of the contract. In such cases the alleged contract was made by one having no sort of, even color of, authority to make it for and on behalf of the city, while according to the admitted facts by defendant, this contract was entered into in the presence of the council and mayor of the city while in session and under its immediate direction, but which direction was not then made a matter of record. However, for the reasons stated that uestion is also left open.

Since, therefore, the court could consider nothing but the allegations of the petition and its amendments in passing upon the demurrer and in dismissing plaintiff's action, and which pleadings on their face exhibited a contract prima facie binding on the city, it was error to sustain the demurrer; and for which reason the judgment is reversed, with directions to set it aside and to overrule the demurrer, and for other proceedings consistent with this opinion.