**STIERLE et al. v. SANITATION DIST. NO. I OF JEFFERSON COUNTY et al.**

**SANITATION DIST. NO. I OF JEFFERSON COUNTY v. LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DIST. et al.**

Court of Appeals of Kentucky.

June 22, 1951.

As Modified on Denial of Rehearing Nov. 30, 1951.

Franklin P. Hays, A. Singleton Cagle, Louisville, for appellant.

Blakey Helm, Morris & Garlove, Steinfeld & Steinfeld, all of Louisville, for appellees.

CULLEN, Commissioner.

The Louisville and Jefferson County Metropolitan Sewer District is a "public body corporate, and political subdivision" organized under chapter 76 of the Kentucky Revised Statutes for the purpose of providing sewer service for the City of Louisville and, subject to certain restrictions, for territory in Jefferson County outside the city limits of Louisville.

Sanitation District No. 1 of Jefferson County is a "political subdivision" organized under chapter 220 of the Kentucky Revised Statutes for the purpose of providing sewer service for a designated area adjoining the City of Louisville.

The Grandview Realty Company is a company which erected, for the purpose of sale, a number of dwelling houses located along Grandview Avenue just outside the city limits of Louisville, and within the territory of the Sanitation District.

For convenience, we will use in this opinion the abbreviated designations "Metropolitan," "Sanitation District," and "Realty Company."

In 1948, Realty Company desired to obtain sewer service for its houses along Grandview Avenue. Although the houses were located within the territory of Sanitation District, the latter had no sewer facilities in the immediate area. However, Metropolitan had a line in its territory within a short distance of the houses. In order to obtain sewer service, Realty Company entered into a contract with Metropolitan, the essential provisions of which may be paraphrased as follows:

1. Metropolitan agreed to build a sewer to serve the houses.

2. Realty Company agreed to pay the greater part of the cost of constructing the sewer.

3. After construction, the sewer was to be in the sole possession and under the sole jurisdiction and control of Metropolitan.

4. Because the houses to be served were located in the territory of Sanitation District, the contract was not to become effective unless and until a supplemental contract relative to the sewer service was entered into between Metropolitan and Sanitation District.

A supplemental contract thereafter was entered into between Realty Company, Metropolitan and Sanitation District, the essential provision of which was that Sanitation District agreed to the construction of the sewer system, on the condition that Sanitation District be permitted to charge its regular sewer service fees to the owners of the property served, the same as if the sewer belonged to and was being operated by Sanitation District, and even though the property owners also would be charged by Metropolitan.

The sewer system was constructed by Metropolitan, and Realty Company complied with its agreement to pay most of the cost of construction. In the meantime, the houses were sold by Realty Company to individual purchasers, and each purchaser was notified of the terms of the sewer service contracts. The purchasers will hereinafter be referred to as the "property owners."

The sewer system was completed early in 1949, and from that time until September 1949 Metropolitan collected from the property owners, through the Louisville Water Company as its collection agent, Metropolitan's regular service charge which averaged less than $2 every two months. In September 1949, Sanitation District began to charge the property owners its regular sewer service charge of $7.60 every two months. The Louisville

Water Company also was collection agent for Sanitation District, and for some reason that is not clear from the record, the Water Company, after September 1949, collected only Sanitation District's charge and did not collect in addition the charge of Metropolitan.

In July 1950 the property owners brought a declaratory judgment action against Metropolitan, Sanitation District, and the Louisville Water Company, seeking a judgment declaring that the property owners were liable only for Metropolitan's sewer service charge, and awarding to them a refund of the amounts paid by them to Sanitation District over and above the amount of Metropolitan's charge. Metropolitan filed a cross-petition against Sanitation District, taking the position that if Sanitation District was entitled to make any charge, Sanitation District was obligated to pay Metropolitan the latter's service charge out of the amounts collected by Sanitation District, and that the property owners should not be required to pay both charges. Issues were raised by demurrers to the pleadings.

The lower court held that the property owners were bound by the terms of the contract between Realty Company, Metropolitan and Sanitation District, and therefore were required to pay Sanitation District's regular charge, but that "in equity" Sanitation District should be compelled to pay, out of the charges collected by it, the amount of Metropolitan's service charge.

The case is before us on an appeal by the property owners from the judgment unfavorable to them, and an appeal by Sanitation District from the judgment on the cross-petition in favor of Metropolitan.

The appellant property owners contend that Sanitation District has no right or power to collect a sewer service charge when Sanitation District is rendering them no service. Sanitation District relies upon the contract, and contends that the property owners are estopped to question the contract. On its appeal from the judgment on the cross-petition, Sanitation District again relies upon the contract, and asserts its right, under the contract, to collect its regular service charge in addition to any charge made by Metropolitan.

As previously stated, Sanitation District and Metropolitan are public corporations or political subdivisions created pursuant to statute. Therefore, it appears necessary to determine first whether the contract between them was one which they had authority to make.

Under KRS 76.170, Metropolitan has the authority to extend its system into any "incorporated area" in Jefferson County, by agreement with the governing body of the incorporated area. However, the statute states that "incorporated area" does not include a sanitation district organized under Chapter 220 of the Kentucky Revised Statutes. The statute therefore says, in effect, that Metropolitan can not extend its system into the territory of Sanitation District even by agreement with Sanitation District. The prohibition against extension of Metropolitan's system into Sanitation District is emphasized in KRS 76.110, wherein it is provided that a metropolitan sewer district cannot in any way, by agreement or otherwise, acquire any property within the boundaries of a sanitation district.

Under KRS 220.510, Sanitation District has the power to make and collect charges for sewer service from "users" of its sanitary works. The statute does not give Sanitation District the power to collect charges from persons who are not using its sanitary works.

It is at once apparent that the contract involved in this litigation is one which Metropolitan had no power to make. It is not merely a case of lack of authority, but one of violation of a specific statutory prohibition. It also is reasonably clear that Sanitation District could not, by contract, acquire the power, denied to it by statute, to make charges against persons who were not users of its facilities.

■ We are of the opinion that the contract in question was ultra vires as to both Sanitation District and Metropolitan, and therefore was void. See Walker v. City of Richmond, 173 Ky. 26, 189 S.W.

1122; Fabric Fire Hose Co. v. City of Louisa, 253 Ky. 407, 69 S.W.2d 726.

In Jefferson County Fiscal Court v. Jefferson County ex rel. Grauman, 278 Ky. 785, 129 S.W.2d 554, 122 A.L.R. 1151, we held that a city had no authority to extend its fire protection service outside the city limits; that a contract between a city and county for such service was ultra vires as to the city, and being therefore not binding on the city, also was not binding on the county. It therefore appears that the contract in the instant case, even if ultra vires only as to Metropolitan, could not be binding on the other parties.

Sanitation District argues at considerable length the doctrine of equitable estoppel, but we think that doctrine is not applicable here. Sanitation District has in no way been prejudiced by its reliance upon the contract. It has not lost or surrendered any rights. In fact, the position of Sanitation District in the transaction does not permit it, with good grace, to lay claim to the protection of equity. However, be that as it may, it appears to be the accepted rule that a party to an ultra vires executory contract made with a corporation is not estopped, merely by the fact of contracting, from raising the question of ultra vires. 13 Am.Jur., "Corporations," Section 766, page 793; 12 Am.Jur., "Contracts," Section 222, page 741.

Further answering the claim of equitable estoppel, it may be pointed out that in the original contract between Realty Company and Metropolitan there was a "saving clause" in the event a court should hold that "either of the parties to the contract lacks power and authority to enter into this agreement," and in the supplemental contract between Realty Company, Sanitation District and Metropolitan there was a clause providing that the agreement was "without prejudice to the question of the legal right of the parties hereto to make the agreement herein contained, or as to the legal right of Metropolitan Sewer District to construct or operate the sewers in question."

It is true that in Sanitation District No. 1 v. Louisville and Jefferson County Metropolitan Sewer Dist., 307 Ky. 422, 208 S. W.2d 751, it was said that there was no prohibition against Metropolitan contracting with Sanitation District for the operation of a system which Sanitation District might construct, but the contract in that case was one providing only for the connection of Sanitation District's sewers with Metropolitan's system, at the boundary line, for the purpose of carrying away sewage from Sanitation District's sewers. Under that contract, Metropolitan was not in any way extending its system into Sanitation District's territory.

If the contract between Realty Company, Sanitation District and Metropolitan was ultra vires and void, as we hold it to be, it follows that Sanitation District has no right or power to charge a sewer service fee to the appellant property owners, because Sanitation District bases its claim solely on the contract. Therefore, as between the property owners and Sanitation District, the property owners are entitled to recover any sums paid in excess of the regular service charge due Metropolitan, and are entitled to be relieved of any further charge by Sanitation District until such time as Sanitation District actually furnishes sewer service to them.

As between Sanitation District and Metropolitan, the latter is entitled to recover from Sanitation District so much of the sums that have been collected by Sanitation District from the property owners as represents the regular service charge payable to Metropolitan. This is not by way of enforcement of the void contract, but by reason of the equitable obligation of the property owners to pay for the service that was rendered to them by Metropolitan. Nicholasville Water Co. v. Board of Councilmen, 36 S.W. 549, 38 S.W. 430, 18 Ky. Law Rep. 592.

As concerns the disposition of the sewer system, and the matter of future sewer service for the properties now connected to the system, an equitable solution must be reached. Clearly, none of the parties should be entitled to profit at the expense of one or more of the other parties, by reason of the contract being void. Walker

682

v. City of Richmond, 173 Ky. 26, 189 S.W. 1122.

■ Under no view of the case could Sanitation District lay claim to ownership of the sewer system. Whether the system belongs exclusively to Metropolitan, or whether the property owners, by reason of the investment made by their predecessor in title, have any claim to an interest in the system, should be developed by further pleadings and proceedings in the court below. When the question of ownership is settled, presumably the right to use the system can be transferred on agreed terms to Sanitation District, and a contract can be made by which Metropolitan will, for an agreed compensation, permit the sewage originating in the system to be disposed of through its mains.

Although Metropolitan is forbidden by statute to operate its sewer system within the territory of Sanitation District, there is a public health problem involved, and the operation should not be discontinued pending disposition of the question of future control and operation of the system. Metropolitan will be permitted to continue the operation of the system, and to collect its regular service charges, until such time as Sanitation District is in a position to assume the service.

The judgment is reversed on both appeals, and the case is remanded for proceedings consistent with this opinion.