Robert A. JACOB, M.D., Appellant,

v.

Philip O. DRIPCHAK, M.D.; Greg W. Rennirt, M.D.; R. Todd Hockenbury, M.D.; Eugene E. Jacob, M.D.; Arnold A. Yashar, M.D.; and Bluegrass Orthopaedic Group, P.S.C., Appellees.

No. 2008–CA–001157–MR.

Court of Appeals of Kentucky.

Jan. 21, 2011.

David A. Friedman (argued), Louisville, KY, for appellant.

Stuart E. Alexander, III, Kathleen M.W. Schoen, Gary R. Hillerich (argued), Louisville, KY, for appellees.

Before TAYLOR, Chief Judge; COMBS and NICKELL, Judges.

## OPINION AND ORDER

TAYLOR, Chief Judge:

This case is before us upon remand from the Kentucky Supreme Court by Opinion and Order dated August 18, 2010. The Supreme Court vacated our opinion rendered August 21, 2009. The Supreme Court ordered the Court of Appeals to reconsider our opinion as concerns the application of Kentucky Revised Statutes (KRS) 417.050 to this case. Presumably, the Supreme Court is referring to the provision set forth therein which states that the Kentucky Arbitration Act as set forth in KRS Chapter 417 does not apply to arbitration agreements between employers and employees. We agree that KRS 417.050, by its plain language, excludes employment agreements from coverage under KRS 417, the Kentucky Arbitration Act. However, we do not interpret the statute as prohibiting, invalidating, or otherwise precluding the enforceability of arbitration clauses contained in employment contracts nor does it otherwise limit Kentucky courts from consideration of same. The statute does not proclaim nor can we interpret that it was the intent of the legislature to implement such a policy upon enactment of KRS 417.050. The statute does, by its plain language, exclude arbitration clauses contained in employment contracts from application of the procedural rules set forth throughout KRS Chapter 417 that are applicable to various arbitration clauses. We would further note that both parties in this case have proceeded throughout the litigation in both the circuit court and before the Court of Appeals, including oral argument before this Court, contending that various provisions of KRS Chapter 417 were applicable to this case, including KRS 417.160 relating to the powers exercised by the arbitrator. We also note that neither party raised any issues regarding the application of KRS 417.050 to this case before this Court or the circuit court below.

Notwithstanding, the opinion previously rendered by this Court on August 21, 2009, reaches a result not based upon the Kentucky Arbitration Act, but rather applicable Kentucky law governing contracts and contractual relationships. As the Kentucky Supreme Court has previously said on numerous occasions, arbitration agreements are a matter of contract and are interpreted according to state law. *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193 (Ky.2002). Accordingly, our review and opinion is premised upon applicable contract law and the interpretation of the two employment contracts that were at issue in this case. Even if KRS 417.050 precluded the arbitration of these employment contracts, the result reached in our earlier opinion would not change. Our review thus proceeds accordingly.

Robert A. Jacob, M.D. brings this appeal from a May 13, 2008, judgment of the Jefferson Circuit Court confirming an arbitration award entered on November 10, 2007, and as clarified on January 28, 2008, in favor of Bluegrass Orthopaedic Group, P.S.C. We affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

This case arises from an employment relationship between Bluegrass Orthopaedic Group, P.S.C. (Bluegrass) and Dr.

Jacob. Dr. Jacob was an orthopedic surgeon in Louisville for many years and provided medical services with other physicians, including his brother Dr. Eugene Jacob, in a business known as Bluegrass Orthopaedic Group. In 1997, Dr. Jacob sold his interest in Bluegrass to other physicians, including his brother. Dr. Jacob continued providing services as a physician for Bluegrass and entered into an employment agreement dated February 1, 1997. The employment agreement provided for a three-year term through January 31, 2000, with annual renewals unless the agreement was otherwise terminated by either party. Under the 1997 employment agreement, Dr. Jacob received income for various services that he provided and further, he was responsible for the payment of various overhead expenses incurred by Bluegrass based upon the volume of medical services provided by him. The 1997 employment agreement was renewed on several occasions until a new employment agreement was entered into between Dr. Jacob and Bluegrass on September 30, 2003. This agreement was effective January 1, 2004, for a five-year term ending December 31, 2008. The 2003 employment agreement explicitly superseded the 1997 agreement entered into by Dr. Jacob and Bluegrass. The 2003 agreement also expressly terminated the prior relationship that existed under the 1997 employment agreement.

In 2006, a dispute arose between Dr. Jacob and Bluegrass regarding Dr. Jacob's compensation and expenses under the 2003 employment agreement. In December 2006, Dr. Jacob filed a complaint in the Jefferson Circuit Court (Case No. 06–CI–11647) against Bluegrass and its individual physician-owners, alleging a breach of contract of the 2003 employment agreement and further asserting an unjust enrichment claim against Bluegrass and the physician-owners. By order entered January 16, 2007, the Jefferson Circuit Court dismissed without prejudice Dr. Jacob's complaint and ordered that any disputes under the 2003 employment agreement must be arbitrated as provided for therein. The 1997 employment agreement had no arbitration provision. Paragraph 15 of the 2003 employment agreement specifically provided that all claims or disputes arising between the parties under the employment agreement must be resolved by arbitration.

Prior to dismissal of Dr. Jacob's complaint, on January 10, 2007, Bluegrass submitted a written demand to Dr. Jacob's attorney to arbitrate the dispute pursuant to section 15 of the 2003 employment agreement. Bluegrass further nominated an arbitrator as permitted under section 15. In February 2007, Dr. Jacob served a Demand For Arbitration upon Bluegrass and its physician-owners as concerns those claims asserted in the Jefferson Circuit Court complaint arising from the 2003 employment agreement.

On May 22, 2007, Bluegrass submitted to the arbitrator a damage itemization and witness list pursuant to the arbitration procedures. Damages sought by Bluegrass included a substantial claim arising under the 1997 employment agreement and subsequent extensions thereof.

An arbitration hearing was conducted by the arbitrator on June 6, 2007. The arbitrator entered an Arbitration Award on November 10, 2007. The award stated as follows:

Dr. Robert Jacob is hereby awarded $11,066 for the Synvisc error;

$1,050 for overcharges for the LaGrange office; and

$16,109.77 for withheld wages.

Bluegrass Orthopaedic is hereby awarded $302,520.75 in overhead costs for Dr. R. Jacob's IME practice from 1997 through 2003;

$61,600 for court deposition testimony for the years 1997 through 2003; and $51,977.31 for Dr. Jacob's payroll taxes from 2000 to 2005.

The claims awarded to Dr. Jacob arose under the 2003 employment agreement. The arbitrator award to Bluegrass was for overhead costs and court deposition testimony for the years of 1997 through 2003 under the 1997 agreement, and he also awarded to Bluegrass payroll taxes for the period of 2000 through 2005, which transcended both agreements. The arbitrator subsequently clarified the award on January 28, 2008, by providing a credit to Dr. Jacob for a calculation error in the amount of $22,792 and further awarded interest to each of the parties for their respective awards dating from November 10, 2007.

Bluegrass then initiated this action in the Jefferson Circuit Court to confirm the arbitration award as clarified in accordance with Kentucky Revised Statutes (KRS) 417.150 *et seq.* Dr. Jacob filed a counterclaim against Bluegrass in this action to confirm the arbitrator's award as clarified in his favor and to further vacate the arbitrator's award as clarified on Bluegrass's claims against Dr. Jacob. The circuit court subsequently entered a "Full and Final Judgment" confirming the respective arbitration awards in favor of each of the parties on May 12, 2008. The circuit court further overruled Dr. Jacob's objection to confirmation of Bluegrass's award and also dismissed Dr. Jacob's counterclaim related thereto. This appeal follows.

## II. STANDARD OF REVIEW

An appeal of an order confirming or denying confirmation of an arbitration award is specifically provided for in KRS 417.220. The circuit court's judgment confirming the respective arbitration awards made in favor of both Dr. Jacob and Blue-

grass in this case did not include any fact finding by the circuit court. The judgment states the following:

1. That both parties['] motion to confirm the Arbitrator's Award is granted;

2. That this Court further reaffirms its previous finding that the dispute between the parties arose from a contractual agreement which the parties had agreed to arbitrate;

3. That all other issues involving the scope of arbitration, the issues to be arbitrated and the parties bound by the arbitration were properly addressed by the Arbitrator;

4. That the Arbitrator's opinion was supported by substantial evidence;

5. That this Court hereby confirms the Arbitrator's Clarified Award and pursuant to KRS 417.170 issues a Judgment in accordance with the Arbitrator's Award and Clarified Award;

6. That this Judgment is final and appealable and there is no just cause for delay;

7. That this Judgment shall bear interest at the rate of 12% per annum until paid;

8. That [Dr.] Jacob's objection to confirmation is overruled; and

9. That [Dr.] Jacob's counterclaim is dismissed.

Thus, our review on appeal for errors below is limited to questions of law which are reviewed *de novo. Fischer v. MBNA America Bank, N.A.,* 248 S.W.3d 567 (Ky.App.2007). Accordingly, we are not bound to defer to the circuit court's application of legal principles or law, including applicable contract law, in determining whether an arbitration agreement existed in this case. *Conseco Fin. Serv. Corp. v. Wilder,* 47 S.W.3d 335 (Ky.App. 2001).

■ The issues raised on appeal in this case also look to the interpretation of the 1997 and 2003 employment agreements as concerns the existence of valid arbitration agreements therein. The interpretation of a contract is also a question of law. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99 (Ky. 2003). Again, our review regarding matters of law in interpreting contracts is *de novo. First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829 (Ky.App. 2000).

## III. ANALYSIS

■ Dr. Jacob raises three issues for our review in this appeal. His first argument is that the arbitrator could not acquire jurisdiction over the arbitration by virtue of Bluegrass failing to properly make its demand for arbitration, including the assertion of its claim against Dr. Jacob.

Our focus here, of course, is the 2003 employment agreement, which was the subject matter of the complaint filed by Dr. Jacob in Case No. 06–CI–11647, in the Jefferson Circuit Court, in December 2006, asserting various claims against Bluegrass under that agreement. This employment agreement, drafted by Dr. Jacob's attorney, clearly provides in paragraph 15 thereof that all claims and controversies that arose under the agreement would be resolved by arbitration. Paragraph 15(a) specifically provides that either party was to provide written notice to the other within 15 days after a controversy had arisen under the agreement to appoint an arbitrator pursuant to the rules of the American Arbitration Association (AAA). Paragraph 15(d) of the 2003 employment agreement provides that upon the appointment of the arbitrator, he shall conduct an arbitration hearing within thirty days thereof. And as Bluegrass notes, paragraph 15(g) of the agreement provided that the rules and procedures of AAA would govern the proceeding except where in conflict with the terms of the employment agreement.

It is obvious to this Court that arbitration of this dispute was triggered upon the filing of the complaint by Dr. Jacob in 2006 in the Jefferson Circuit Court. As noted, the circuit court dismissed that action without prejudice and ordered the parties to arbitrate the dispute in its order dated January 16, 2007. At some point in time between the filing of the complaint and the actual order dismissing the complaint, Bluegrass, through its counsel, served notice upon Dr. Jacob that it intended to arbitrate the claims and disputes arising under the 2003 employment agreement. While the Bluegrass demand did not set forth a detailed claim for damages, given the circumstances of this case, the demand nonetheless put Dr. Jacob upon sufficient notice that Bluegrass did intend to arbitrate claims arising under the 2003 employment agreement. Likewise, the notice was sufficient to comply with the provisions of paragraph 15 of the 2003 employee agreement, as so determined by the arbitrator. Accordingly, we do not believe the circuit court committed any error in not setting aside the award as a result of an improper demand or notice for arbitration by Bluegrass.

■ The second issue raised in this appeal by Dr. Jacob looks to the circuit court confirming the arbitrator's award of damages to Bluegrass against Dr. Jacob that arose under the 1997 employment agreement and any subsequent renewals thereof. This presents a more complicated and troubling issue for this Court. As noted, the complaint upon which the circuit court originally ordered arbitration looked only to the 2003 employment agreement. Dr. Jacob raised this issue before the arbitrator, arguing the arbitrator's jurisdiction was limited to only the 2003 arbitration

agreement since it contained an arbitration clause and the 1997 employment agreement did not. We would note that that had the parties' employment relationship ended in 2003 and a dispute existed regarding their prior agreements, there would have been no mandatory arbitration of any claims arising thereunder at that time. The arbitrator addressed this issue as part of the arbitration proceeding and as noted by Bluegrass in its brief, the arbitrator gave the following rationale for not dismissing the arbitration on this ground:

> The issue if I understand it is whether or not the 1997 contract is properly arbitrable. . . . I find that it is. Aside from the argument of economy, the question was that we have identical parties under both the 1997 and 2003 contracts and they all arise from the same transaction and ... To require separate forums to resolve the 03 contract from the 97 contract could clearly resolve [sic] inconsistent results. It does arise from the same transaction and occurrence and I believe Mr. Hillerich is correct in saying that this would be a compulsory [counterclaim]. So I will overrule the motion to dismiss. (Transcript p. 13).

Bluegrass Brief at 12.

While the arbitrator states commendable reasons for addressing claims under the 1997 agreement, in our opinion, none of these reasons constitutes a sufficient legal basis to permit the arbitrator to exercise jurisdiction over any claims arising under the 1997 employment agreement and any subsequent renewals thereof. When the circuit court ordered this case to arbitration in January 2007, only the 2003 employment agreement was placed in issue before the court at that time. The 2003 employment agreement clearly and plainly states that the 1997 agreement was superseded and terminated upon commencement of the term of the new employment agreement.

■ Bluegrass eloquently argues that the recitals to the 2003 agreement reference the 1997 agreement, which effectively incorporates the former agreement, including the pending claims, into the new agreement. We disagree. Prefatory statements or recitals to a contract are customarily not an essential part of the agreement. In *Jones v. City of Paducah*, 283 Ky. 628, 142 S.W.2d 365 (1940) our highest Court explained this rule of contract construction as follows:

> Like the preamble of a legislative measure, a "Whereas" clause of a contract is but an introductory or prefatory statement meaning "considering that" or "that being the case." Webster's New International Dictionary. It explains the reasons inducing the execution of the contract and perhaps describes its purposes or objects. The recital may be resorted to as an aid in construction or interpretation, but it is not an essential part of the operative portions of the contract.

*Id.* at 367. *See also* 17A C.J.S. *Contracts* § 317 (1999).

The recital language relied upon by Bluegrass does not add to or aid in interpreting the operative terms of the 2003 employment agreement. Specifically, paragraph 14 reads as follows:

> 14. *ENTIRE AGREEMENT; AMENDMENT; PRIOR EMPLOYMENT AGREEMENT*
>
> (a) *Entire Agreement; Amendment.* This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements, understandings or arrangements, written or oral, related to its subject matter. This Agreement may

not be changed orally and may be changed only by an amendment in writing signed by Employee and specifically considered and approved by the Corporation.

(b) *Prior Agreement Terminated Upon Commencement of Term.* Specifically, but not by way of limitation of the provisions set forth in Section 14(a), upon commencement of the Term under this Agreement, the prior Employee Agreement between the Corporation and Employee, dated as of **February 1, 1997**, shall be deemed terminated.

▆▆▆ Paragraph 14 clearly ends or concludes the prior employment agreement. There is absolutely no reservation of claims in the 2003 employment agreement for any dispute or claim that arose between the parties under the 1997 employment agreement or any subsequent renewals thereof. Those claims, if any, were vested at the time of termination of the 1997 agreement and neither party agreed to arbitrate those claims. We agree with Bluegrass's position that the arbitrator's resolution of facts or disputes and application of the law are not customarily subject to review by the courts. *Conagra Poultry Co. v. Grissom Transp., Inc.*, 186 S.W.3d 243 (Ky.App.2006). However, the interpretation of a contract is solely a matter of law for the courts and, in this case, the arbitrator exceeded his powers in awarding damages under an agreement that otherwise was not properly before the arbitrator and that further did not contain a mandatory arbitration provision as found in the 2003 employment agreement. The fact that there may have been existing claims pending at the time the 2003 agreement became effective is immaterial to this appeal as to whether the arbitrator had sufficient authority or jurisdiction to consider the same. Dr. Jacob did not agree to arbitrate those claims nor was he obligated to do so under the 2003 employment agreement.

To the extent the circuit court confirmed the award based upon the 1997 employment agreement or any subsequent renewals thereof, the circuit court clearly erred as a matter of law and its judgment confirming said award shall be reversed and remanded for further proceedings consistent with this opinion. We do not reach the merits nor express any opinion on any claims or damages, if any, that may exist under the 1997 employment agreement. Any issues relative to the 1997 employment agreement are not properly before the Court at this time. We simply conclude that claims arising under the 1997 employment agreement and renewals thereof are not subject to arbitration.

The third and final issue raised by Dr. Jacob in this appeal is that the arbitrator erred by not continuing the arbitration proceeding as a result of Dr. Jacob receiving such short notice of the detailed claim of Bluegrass arising under the 1997 employment agreement prior to the arbitration hearing. Given that we have heretofore reversed in part and remanded the circuit court's confirmation of the arbitration award to the extent of any damages awarded under the 1997 employment agreement, we find this issue to be moot and thus warrants no further review in this opinion.

We also note again that the Jefferson Circuit Court's judgment confirms awards to both Dr. Jacob and Bluegrass. Given that Bluegrass has not appealed the award to Dr. Jacob under the 2003 employment agreement, which the arbitrator had jurisdiction of and the authority to render, that part of the Jefferson Circuit court judgment shall be affirmed.

### IV. MOTION TO DISMISS

During the course of these proceedings, Bluegrass filed a motion to dismiss the

appeal which was passed by a motion panel of this Court for disposition by this panel. Bluegrass argues in its motion that Dr. Jacob has waived his right to appeal the arbitration award pursuant to paragraph 15(e) of the 2003 employment agreement. Since the issues raised on appeal by Dr. Jacob involve claims arising under the 1997 employment agreement, which we have heretofore held were not within the jurisdiction or authority of the arbitrator to consider, we find Bluegrass's motion to be moot and thus, deny the same.

## V.   CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is reversed in part as concerns its confirmation of the arbitration award that grants Bluegrass damages under the 1997 employment agreement and renewals thereof prior to the effective date of the 2003 employment agreement.   This case is further remanded to the Jefferson Circuit Court with directions to make a determination of damages, if any, that Bluegrass may be entitled to arising under the 2003 employment agreement.   Additionally, the arbitration award in favor of Dr. Jacob is affirmed as all claims thereunder arose under the 2003 employment agreement and Bluegrass did not cross-appeal this award in Dr. Jacob's favor.

ALL CONCUR.