OPINION OF THE COURT BY CHIEF JUSTICE MINTON
*532 Kentucky Revised Statute ("KRS") 336.700(2) prohibits employers from conditioning employment on an existing employee's or prospective employee's agreement to "waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled...." When Northern Kentucky Area Development District ("NKADD") conditioned Danielle Snyder's continued employment on her agreement to arbitrate any dispute that may arise between them, that agreement violated KRS 336.700(2). As a result, the arbitration agreement between NKADD and Snyder-the enforcement of which is the basis of the case before us today-is unenforceable as a matter of state statutory law.
NKADD correctly asserts that the Federal Arbitration Act ("FAA")[1] broadly prohibits discrimination against arbitration agreements. It then argues that the FAA preempts the operation of KRS 336.700(2) under the facts of this case. But, rejecting NKADD's argument, we hold that no such discrimination occurred here because KRS 336.700(2) does not prohibit arbitration agreements, limit the power of persons to enter voluntarily into arbitration agreements, or single out arbitration agreements in any way. Correctly viewed, KRS 336.700(2) is an anti-discrimination statute that prohibits employers from conditioning employment on an agreement to, not only arbitration, but also any waiver or diminution of the employee's existing or future rights or claims for benefits arising out of employment. So, on discretionary review, we affirm for different reasons the Court of Appeals' decision that affirmed the trial court's order denying NKADD's motion to compel enforcement of the arbitration agreement. And we remand this case to the trial court for further proceedings consistent with this opinion.
I. BACKGROUND.
NKADD is a government entity created under KRS 147A.050 et. seq. It is funded by taxpayers to administer social programs in an eight-county area of Northern Kentucky. It receives federal funds for various social programs, including an elder-abuse program, a long-term-care ombudsman program, and a family caregiver program. Additionally, using federal funds, NKADD partners with local food banks to distribute food to lower-income households and administers a small-business loan fund. It also provides employment services through its Northern Kentucky Workforce Investment Board to supply workers to businesses and participates in a regional public-private partnership working to supply employees to businesses in the Northern Kentucky-Greater Cincinnati area.
Danielle Snyder worked for NKADD as an administrative purchasing agent. While employed there, Snyder had to sign an arbitration agreement mandating arbitration of any dispute she had with NKADD. The agreement makes clear, "As a condition of employment with the District, you will be required to sign the attached arbitration agreement." Additionally, "You may revoke your acceptance of the agreement by communicating your rejection in writing to the District within five days after you sign it. However, because the agreement is a condition of employment, your employment and/or consideration for employment will end via resignation or withdrawal from the process."
Snyder filed an action in the trial court asserting claims under the Kentucky *533 Whistleblower Act ("KWA") and the Kentucky Wages and Hours Act ("KWHA") after NKADD terminated her employment. NKADD filed a motion to stay the proceedings and compel arbitration based on the arbitration agreement. The circuit court denied NKADD's motion, and NKADD appealed.
The Court of Appeals affirmed the trial court's denial, explaining that NKADD is a creature of statute, and the wording of two Kentucky statutes, which purportedly prohibit an employer's conditioning employment on the employee's agreement to arbitrate any disputes, makes ultra vires any arbitration contract by NKADD forcing arbitration in this way. Therefore, the Court of Appeals reasoned, the FAA cannot compel arbitration between the parties because NKADD never had the authority to enter into an arbitration agreement in the first place, and "federal law does not pre-empt the authority of the Commonwealth to deny the authority of its [agencies] to enter into arbitration agreements."
II. ANALYSIS.
We granted NKADD's motion for discretionary review to consider whether the FAA preempts Kentucky's legislative enactment to preserve employee rights, KRS 336.700(2), because it seeks, among other broadly stated areas, to prohibit employers from conditioning employment on the employee's agreement to a contract provision mandating arbitration in the event of a dispute between them. We ultimately conclude that the statute does not run afoul of the FAA under the facts of this case. But first, we must determine whether NKADD truly does not have the power to condition employment on agreement to arbitration.
A. NKADD and its power.
"[A]dministrative agencies have no inherent authority and may exercise only such authority as may be legislatively conferred."[2] It is axiomatic that NKADD, as a state agency, only has the power that the General Assembly gives it.
NKADD exists by virtue of KRS 147A.050(7). The precise legal term to describe the creature NKADD may be elusive, but the parties and the lower courts have not quibbled over the fact that NKADD is a Kentucky state agency.
Like all area development districts, NKADD is operated by state employees under KRS 147A.060 and 147A.070 and receives taxpayer funding. The governing body of NKADD, its board of directors, entirely derives its power from KRS 147A.080 and 147A.090, the statutes that detail all of the power that the General Assembly has granted to NKADD. Among other powers, the board of directors may "[m]ake and enter into all contracts or agreements necessary or incidental to the performance of its duties"[3] and "[p]erform such other and further acts as may be necessary to carry out the duties and responsibilities created by KRS 147A.050 to 147A.120."[4]
The text of these statutes alone does not explicitly allow NKADD to mandate agreement to arbitration as a condition of employment. At best, the power to condition employment on agreement to arbitration may be implied by the broad language used in the statutory provisions outlining NKADD's powers and responsibilities.
Regardless, we find explicit statutory limitation on the ability of NKADD to *534 condition employment on agreement to arbitration. KRS 336.700(2) states:
Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, no employer shall require as a condition or precondition of employment that any employee or person seeking employment waive, arbit rate, or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled under any provision of the Kentucky Revised Statutes or any federal law.
KRS 336.700(1) defines employer to mean "any person, either individual, corporation, partnership, agency, or firm, that employs an employee."
The parties do not challenge the applicability of KRS 336.700(2) to NKADD in this case. Indeed, KRS 147.080(10) deems an "area development district organization" a "public agency," which appears to fall within the ambit of the definition of employer in KRS 336.700(1), which includes "agenc[ies]."
Although one could argue that the definition of employer in KRS 336.700(1) appears to contemplate private, not public, entities,[5] we dealt with a similar situation in Madison County Fiscal Court v. Kentucky Labor Cabinet.[6] There, we considered the exact same definition of employer[7] for the purpose of the applicability of KRS 337.285, the wage and hour requirements for overtime pay, to public entities, including the Madison County Fiscal Court, Central Campbell County Fire District, and ten municipal corporations.[8] We concluded "municipal corporations" fell within the ambit of "corporation[s]" as included within the definition of employer.[9] In conformance with the spirit of Madison County, we find NKADD, an agency of the Commonwealth, constitutes an "agency" contemplated by the definition of employer in KRS 336.700(1) such that KRS 336.700(2) applies.
We conclude that Kentucky state-created entities do not have the power to compel, as a condition of employment, any employee agree to arbitrate any claim, right, or benefit he or she may have against NKADD. Although NKADD appears to have broad power to enter into agreements and define the terms of those agreements, KRS 336.700(2) acts expressly prohibits NKADD from conditioning employment on an agreement to arbitrate.
We therefore conclude that the General Assembly intended to forbid NKADD from having the power to condition employment on agreement to arbitration by the express language of KRS 336.700(2).[10]
When a government entity acts beyond its power by violating an express *535 statutory prohibition, its actions are said to be "ultra vires ... and therefore ... void."[11] KRS 336.700(2) is a direct limitation on the power of state agencies to condition employment of their state employees on agreement to an arbitration clause; in fact, this statute outright prohibits such act.[12] Because NKADD, a state agency affected by the prohibitions of KRS 336.700(2), never had the power to force Snyder to agree to arbitrate disputes arising between them as a condition of her employment, the resulting arbitration agreement is void.
B. The FAA does not preempt KRS 336.700(2) in this case.
Although we have determined that NKADD acted beyond its power when forcing Snyder to agree to arbitrate disputes arising between them as a condition of her employment, we nonetheless must determine if the FAA nullifies this conclusion because of its preemptive effect on laws discriminating against arbitration.
The U.S. Supreme Court defined the parameters of the FAA, the law at issue in this case, most recently in Kindred Nursing Centers Ltd. Partnership v. Clark.[13] "The Federal Arbitration Act makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' "[14] "[ 9 U.S.C. § 2 ] establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' "[15] "The FAA thus preempts any state rule discriminating on its face against arbitration-for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.' "[16] "And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."[17]
The broad preemptive effect of the FAA is undeniable. But we fail to see how a law, in this case KRS 336.700(2), that does not actually attack, single out, or specifically discriminate against arbitration agreements must yield to the FAA.
We cannot read KRS 336.700(2) as evidencing hostility to arbitration agreements. KRS 336.700(2) does not prevent NKADD, any state entity, or any private *536 entity, from agreeing to arbitration. KRS 336.700(2) simply prevents NKADD from conditioning employment on the employee's agreement to arbitration. This is the key distinction supporting the reason the FAA does not apply to preempt KRS 336.700(2). That statute only proscribes conditioning employment on agreement to arbitration, not the act of agreeing to arbitration.
Moreover, KRS 336.700(2) does not single out arbitration clauses. KRS 336.700(2) prevents the conditioning of employment on an employee's agreement to waive or otherwise diminish "any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled ...."[18] This not only means that an employer cannot force the employee to agree to arbitration on penalty of termination but also means that an employer cannot force an employee to, for example, waive all rights to file KWA claims against the employer. In this way, KRS 336.700(2) is a law of general applicability that prevents employers from conditioning employment on the employee's agreement to forego the exercise of all rights against the employer.
KRS 336.700(2) is not a law that discriminates or singles out arbitration clauses. It is a law that prohibits employers from firing or failing to hire on the condition that the employee or prospective employee waive all existing rights that employee would otherwise have against the employer. More importantly, KRS 336.700(2) does nothing to discriminate against arbitration clauses-it only prevents an employer from terminating or refusing to hire an individual who refuses to agree to such a clause.
Even the broadest construction of the reach of the FAA would not allow employers to fire or hire an employee or prospective employee based on that employee's willingness or unwillingness to sign an arbitration agreement. It is true that the U.S. Supreme Court recently expanded the reach of the FAA: "[T]he Act cares not only about the 'enforce[ment]' of arbitration agreements, but also about their initial 'valid[ity]'-that is, about what it takes to enter into them.... A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act than a rule selectively refusing to enforce those agreements once properly made."[19]
As stated, however, KRS 336.700(2) does not "selectively find[ ] arbitration contracts invalid"; rather, KRS 336.700(2) prevents an employer from entering into any agreement whatsoever that conditions employment on the employee's agreement to waive any and all rights against the employer. Moreover, KRS 336.700(2) does not invalidate arbitration contracts because they are arbitration contracts; KRS 336.700(2) only invalidates arbitration contracts when the employer evidences an intent to fire or refuse to hire an employee because of that employee's unwillingness to sign such a contract. This is not an attack on the arbitration agreement-it is an attack on the employer for basing employment decisions on whether the employee is willing to sign an arbitration agreement.
A comparison to the rule at issue in Kindred Nursing may be of benefit: "[A]n agent c[an] deprive her principal of an 'adjudication by judge or jury' only if the power of attorney 'expressly so provides.' "[20] The U.S. Supreme Court identified *537 that this rule "fails to put arbitration agreements on an equal plane with other contracts" and "singl[ed] out [arbitration agreements] for disfavored treatment" because "the [Kentucky Supreme Court] nowhere cautioned that an attorney-in-fact would not need a specific authorization to, say, sell her principal's furniture or commit her principal to a non-disclosure agreement."[21] Finally, the U.S. Supreme Court noted, "A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the Act ...."[22]
The preempted rule at issue in Kindred Nursing stated that a person acting under a power-of-attorney may never enter into an arbitration agreement on the principal's behalf unless the principal provides express written assent to such. The rule singled out arbitration agreements because the rule only required specific written authorization for an agent acting under a power-of-attorney to enter into an arbitration agreement and not any other type of agreement.
This is different from KRS 336.700(2). The statute does not single out arbitration agreements-it makes clear that any contract that waives or limits an employee's rights against the employer is void if employment was predicated on signing the agreement. Apart from arbitration agreements, this would include, to name a couple of examples, an agreement whereby the employee waives the ability to file a KWA claim against the employer, or an agreement that limits the amount of damages the employee can recover against the employer.
KRS 336.700(2) is not an anti-arbitration clause provision-it is an anti-employment discrimination provision. KRS 336.700(2) uniformly voids any agreement diminishing an employee's rights against an employer when that agreement had to be signed by the employee on penalty of termination or as a predicate to working for that employer. As such, we hold that the FAA does not preempt KRS 336.700(2) because it does not discriminate against arbitration agreements but rather the conditioning of employment on an employee's agreement to arbitrate.
III. CONCLUSION.
NKADD acted beyond the scope of its power when it conditioned Snyder's employment on her willingness to sign an arbitration agreement. So NKADD's act of doing so is beyond the limits of its legislative grant of authority, rendering the arbitration agreement itself void. The FAA does not mandate a contrary holding because it does not preempt KRS 336.700(2) in this case. We affirm the result reached by the Court of Appeals for the reasons stated in this opinion and remand this case to the trial court for further proceedings consistent with this opinion.
Minton, C.J., Cunningham, Hughes, Keller, Venters and Wright, JJ., sitting. All concur. VanMeter, J., not sitting.

9 U.S.C. 1, et seq.

Herndon v. Herndon, 139 S.W.3d 822, 826 (Ky. 2004) (citing Linkous v. Darch, 323 S.W.2d 850 (Ky. 1959) ; Robertson v. Schein, 305 Ky. 528, 204 S.W.2d 954 (1947) ).

KRS 147A.080(4).

KRS 147A.080(12).

Further evidence of this fact is the General Assembly's recent amendment of KRS 336.180(2) 's definition of employer, which now encompasses "public employer." KRS 336.180(2) applies to the entirety of Chapter 336 "unless the context requires otherwise." Because of the General Assembly's recent amendments, KRS 336.700(1) now appears to be superfluous if we read it to encompass "public employers." However, because the events of this case arose before the amendment, and because the parties have not raised this issue before us, we decline to entertain this argument.

352 S.W.3d 572 (Ky. 2011).

See KRS 337.010(1)(d).

Madison County, 352 S.W.3d at 573.

Id. at 576.

Our holding in this regard does nothing to displace the power of NKADD to reach a mutual agreement with an employee to arbitrate a dispute. KRS 336.700(2) only prevents conditioning employment on agreement to arbitration.

Stierle v. Sanitation Dist. No. 1 of Jefferson Cty., 243 S.W.2d 678, 680 (Ky. 1951) (citing Walker v. City of Richmond, 173 Ky. 26, 189 S.W. 1122 (1916) ; Fabric Fire House Co. v. City of Louisa, 253 Ky. 407, 69 S.W.2d 726 (1934) ).

Snyder also argues that KRS 417.050(1) prohibits NKADD from conditioning employment on agreement to arbitration. However, a plain reading of that statute, coupled with the Court of Appeals' analysis in Jacob v. Dripchak, 331 S.W.3d 278, 279 (Ky. App. 2011), leads us to believe otherwise. The Court of Appeals in Jacob persuasively explained that KRS 417.050(1) only proclaims that Chapter 417, Kentucky's Uniform Arbitration Act, does not apply to arbitration agreements between employers and employees, not that arbitration agreements between employers and employees are outright prohibited. Jacob, 331 S.W.3d at 279.

--- U.S. ----, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017).

Id. at 1426 (quoting 9 U.S.C. § 2 ).

Kindred Nursing, 137 S.Ct. at 1426 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ).

Kindred Nursing, 137 S.Ct. at 1426 (citing Concepcion, 563 U.S. at 341, 131 S.Ct. 1740 ).

Kindred Nursing, 137 S.Ct. at 1426.

(emphasis added).

Kindred Nursing, 137 S.Ct. at 1428.

Id. at 1426.

Id. at 1427.

Id. at 1428.