**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**EMPLOYEE RESOURCE GROUP, LLC,**
**DAVID CURRY and JAMES MOLLETTE,**
**Defendants Below, Petitioners**

**vs)  No. 18-0007 (Mingo County 16-C-214)**

**ANITA COLLINS,**
**Plaintiff Below, Respondent**

**FILED**
**June 3, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioners Employee Resource Group, LLC (sometimes referred to as "ERG"), David Curry, and James Mollette (referred to collectively as "petitioners"), by counsel Bradley K. Shafer, appeal the December 5, 2017, order entered by the Circuit Court of Mingo County, denying their motion to enforce an arbitration agreement. Respondent Anita Collins, by counsel Nathan D. Brown, filed a response. On appeal, petitioners contend that the circuit court erred in refusing to enforce the parties' arbitration agreement because it found they failed to produced a signed copy of the agreement.

The Court has considered the parties' briefs, oral arguments and appendix record on appeal. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed and this case is remanded for further proceedings consistent with this memorandum decision.

**I. Facts**

On April 24, 2016, respondent was employed by petitioner ERG to work at a Wendy's restaurant located in South Williamson, Kentucky. As part of the hiring process, respondent was sent an e-mail containing an "Agreement and Receipt for Dispute Resolution Program" (hereinafter "Arbitration Agreement"), in addition to a document entitled "Dispute Resolution Program, Program Booklet." Respondent was asked to review these documents, as well as other employment-related documents, and to sign the various documents digitally, or electronically, including the Arbitration Agreement. A copy of the Arbitration Agreement at issue, which was submitted to the circuit court, reflects respondent's digital signature on the agreement as follows: "Digitally Signed By: Anita Collins; Date: Apr-24-2016 1:12:25 PM EDT" on the line above "Associate Signature."

1

The Arbitration Agreement expressly provides, in relevant part:

> MUTUAL PROMISE TO RESOLVE CLAIMS BY BINDING ARBITRATION. The Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute. I also agree that any arbitration between the Company and me is of an individual claim and that any claim subject to arbitration will not be arbitrated on a collective or class-wide basis.
>
> The mutual obligations set forth in this Agreement shall constitute a contract between the Employee and the Company but shall not change an Employee's at-will relationship or any term of any other contract or agreement between the Company and Employee. This Policy shall constitute the entire agreement between the Employee and Company for the resolution of Covered Claims. The submission of an application, acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance of the dispute resolution program. No signature shall be required for the policy to be applicable.
>
> Legally protected rights covered by this Arbitration Agreement are all legal claims, including: . . . tort claims (including, but not limited to, claims for physical, mental or psychological injury, but excluding statutory workers compensation claims); claims for wrongful termination; sexual harassment; [and] discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability, whether under federal, state or local law) . . . .
>
> I understand and agree that by entering into this Agreement, I anticipate gaining the benefits of a speedy, impartial dispute resolution procedure. This procedure is explained in the Dispute Resolution Program Booklet, which I acknowledge I have received and read or have had an opportunity to read.
>
> . . . .
>
> . . . This Agreement and the Dispute Resolution Program Booklet are the complete agreement of the parties on the subject of arbitration of disputes. . . .
>
> . . . .

2

VOLUNTARY AGREEMENT. I acknowledge that I have carefully read this Agreement, I understand its terms, that all understandings and agreements between the Company and me relating to the subjects covered in this Agreement are contained in it, and that I have entered into the Agreement voluntarily and not in reliance on any other promises or representations by the Company other than those in the Agreement itself and the Dispute Resolution Program.

I further acknowledge and agree that I have been given the opportunity to discuss this Agreement with my own private lawyer and have used that opportunity to the extent that I wish to do so. . . .

On November 3, 2016, respondent was terminated from Wendy's. Following her termination, respondent filed a complaint in the circuit court against petitioners alleging that she was sexually harassed and that she was terminated from her employment, because she reported the ongoing sexual harassment that she suffered. Respondent's claims included: 1) violation of the Kentucky Civil Rights Act, Kentucky Revised Statute § 344.040 (LexisNexis 2011); 2) retaliation in violation of the Kentucky Civil Rights Act; 3) wrongful termination; 4) extreme and outrageous conduct; 5) hostile work environment; and 6) negligent supervision/retention.[1]

In response to the complaint, petitioners filed answers and a motion to enforce the Arbitration Agreement. Petitioners argued that respondent was presented with and endorsed the Arbitration Agreement and that the claims raised by respondent's lawsuit were subject to that agreement. Respondent opposed petitioners' motion by arguing, in part, that the Arbitration Agreement was not enforceable because she "did not in fact sign the document." Specifically, respondent contended that "[w]ithin the three (3) page document, there are multiple places in which the employee is asked to 'digitally sign.' Those places have a typed name of Anita Collins; however, there is no signature on the document. Further, the plaintiff indicates that she has never seen nor signed the document." In response, petitioners argued, inter alia, that the Arbitration Agreement was an enforceable contract and that respondent signed the agreement with her digital signature.[2]

---

[1]Despite the agreement between the parties and the circuit court that Kentucky law applies to this action, we are perplexed by petitioners' failure to cite to a single Kentucky case in their brief. *See infra* section II (discussing the applicability of Kentucky law).

[2]The Arbitration Agreement at issue contains a delegation provision that directs the arbitrator, not the circuit court, "shall have the exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or voidable." Petitioners raised the delegation provision in their reply brief in support of their motion to enforce the Arbitration Agreement. But for reasons that are unclear, petitioners failed to raise the delegation

(continued...)

3

In an order entered on May 22, 2017, the circuit court denied petitioners' motion to enforce arbitration, finding that "no evidence was tendered regarding when . . . [respondent] was presented with said agreement and how much time she was afforded to review said document prior to the alleged electronic signing of the same[;]" that respondent "contends she did not sign" the agreement; and, that "no enforceable contract exists between" respondent and petitioners. The circuit court, however, granted petitioners leave to "re-address said motion after" the parties engaged in discovery.

Thereafter, both respondent and Mr. Ball, the manager of the Wendy's where respondent worked and the individual who hired and fired respondent, were deposed. Respondent testified that she applied for Wendy's on her iPhone and used her Yahoo email address.[3] She testified that she no longer has the iPhone used in the application process. She further testified that she did not receive certain employment documents, including the Arbitration Agreement. Respondent, however, testified that if she had created a passcode or password for the purposes of the security of the application process,[4] she would not have given it to anyone else to use. Regarding her employee orientation process, she testified that she did not complete any paperwork as part of the hiring process, including an I-9 "Employment Eligibility Verification," or provide proof that she was authorized to work in the United States. Despite this testimony, subsequent to her deposition, petitioners produced a copy of respondent's I-9, a copy of her driver's license, and her W-4, which indicates her withholdings. Respondent said that the only thing she received from Wendy's was "my apron, shirt, and hat[.]"

Mr. Ball's deposition revealed that he had worked for Wendy's since 2005. He testified that once an individual completes the on-line application for a job with Wendy's he manages, the application is sent to him. He then reviews the application and determines whether he wants to proceed to hire the individual. If the individual is hired, a program called TalentReef generates an email that is sent to the employee at the email address the applicant provides. The email includes the Arbitration Agreement and the "Employee Resource Group LLC Dispute Resolution Program

_____

[2](...continued)
provision before this Court on appeal. As we found in *Employee Resource Group, LLC v. Harless*, No. 16-0493, 2017 WL 1371287 (April 13, 2017) (memorandum decision), failure to assert any issue regarding the delegation provision before this Court serves as a waiver on appeal. *Id*. at *2 n.4.

[3]Respondent testified that she no longer has access to this email account because she had forgotten her password and "for some reason it locked." She testified that had occurred some eight months prior and she did not know any way to get back into that account. Because of this, petitioners were unable to obtain email records regarding the communications that respondent received as part of the hiring process. Similarly, petitioners were unable to obtain emails sent from the TalentReef program to respondent as part of the hiring process. Nevertheless, petitioners did produce a copy of the digitally signed Arbitration Agreement, as well as other signed employment-related forms that also had been digitally signed by respondent.

[4]The terms "passcode" or "password" are used interchangeably by the parties.

4

Booklet." The email is sent to the employee, and the employee confirms receipt of those documents by electronically signing them. The recipient can print the documents if desired. Mr. Ball stated that when an employee completes an on-line application, the person sets up a profile and creates a password. The employee then enters that password to electronically sign the documents—there is no "physical signature." If the employee does not complete the forms emailed to him or her by digitally signing the documents, Mr. Ball testified that he does not schedule the orientation and the individual is not hired. If the forms are completed, Mr. Ball schedules an orientation. As part of the orientation, Mr. Ball stated that he looks at the new employee's social security card and photo identification card, makes a copy of those documents, and places them in the restaurant's file. Mr. Ball then logs onto the TalentReef program and digitally signs all the paperwork that the new employee has reviewed by entering his password. Mr. Ball stated that it is his customary and routine practice to review with any new employee the policies that were previously emailed to the employee "to make sure they understand it[,]" and to try and answer any questions the employee may have.

After discovery, petitioners renewed their motion to enforce the Arbitration Agreement, arguing that a valid arbitration agreement had been entered into between the parties. Respondent filed a response, contending that she "did not in fact sign the document." Respondent maintained that the "'digital signatures' were merely pre-stamped to the documents." She contended that she never saw the documents.

The circuit court denied petitioners' motion to enforce arbitration in an order entered on December 5, 2017. The circuit court found that respondent's name "was prestamped into the signature block[;]" that "ERG did produce an Arbitration Agreement which had . . . [respondent's] typed name in a digital signature box in seven (7) distinct locations all dated for April 24, 2016, and that [sic] the time of 1:12:25 PM EDT[;]" that under Kentucky law, "as a matter of general contract law, an individual cannot be legally bound by an agreement to which she did not consent[;]" that "at best, . . . [petitioner ERG] has . . . [respondent's] pre-stamped name on its Agreement[;]" and that no enforceable contract exists between petitioners and respondent. It is from this order that petitioners appeal.

## II. Standard of Review/Applicable Law

Whether the arbitration agreement is enforceable is a question of law. In syllabus point one of *West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017), this Court held: "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Further, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

5

The parties all agree, and the circuit court correctly found, that the arbitration agreement at issue is subject to the Federal Arbitration Act ("FAA")[5] and that "'under the FAA, whether a valid arbitration agreement exists between the parties is determined by the applicable contract law which, in this case, is Kentucky.'" "In general, this State adheres to the conflicts of law doctrine of *lex loci delicti*." Syl. Pt. 1, *Paul v. Nat'l Life*, 177 W. Va. 427, 352 S.E.2d 550 (1986). Thus,

> West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury. *Blais v. Allied Exterminating Co.*, 198 W.Va. 674, 482 S.E.2d 659 (1996); *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986); *Vest v. St. Albans Psychiatric Hospital, Inc.*, 182 W.Va. 228, 229, 387 S.E.2d 282, 283 (1989). However, under the *lex loci delicti* choice-of-law rule, West Virginia procedure applies to all cases before West Virginia courts. "It is traditional that a forum court always applies its own procedural rules and practices, regardless of the procedure that might be employed if the case were tried at the place where the cause of action arose. (footnote omitted)."

*McKinney v. Fairchild Int'l, Inc.*, 199 W. Va. 718, 727, 487 S.E.2d 913, 922 (1997). In this case, the Arbitration Agreement arose out of respondent's application for employment at a Wendy's restaurant in South Williamson, Kentucky, and all the allegations forming the basis for respondent's claims against petitioners took place in Kentucky. Thus, the resolution of the issue now before the Court necessarily requires the application of Kentucky law.

### III. Discussion of Issue

The determinative issue before the Court is whether the circuit court erred in refusing to enforce the Arbitration Agreement based upon its determination that the agreement was not signed by respondent. Petitioners argue that by digitally signing the document, respondent agreed to enter the Arbitration Agreement voluntarily and acknowledged that she had received the agreement and read, or had the opportunity to read, the agreement. Petitioners claim that the circuit court erred in finding that respondent's name was "prestamped" rather than digitally signed on the Arbitration Agreement and that petitioners "cannot conclusively produce a signed agreement."[6]

---

[5]*See* 9 U.S.C.§§ 1 to -16 (2012).

[6]Petitioners brought to the Court's attention during oral argument a recent case from the Supreme Court of Kentucky, *Northern Kentucky Area Development District v. Snyder*, 570 S.W.3d 531 (Ky. 2018). In *Snyde*r, the Kentucky court found that an arbitration agreement between a state agency and its employee was unenforceable because Kentucky Revised Statute 336.700(2) (LexisNexis 2011) "is a direct limitation on the power of state agencies to condition employment of their state employees on agreement to an arbitration clause; in fact, this statute outright prohibits

(continued...)

6

Respondent argues that the parties did not enter into a contract and, therefore, she is not required to submit her claims to arbitration. She maintains that the evidence does not show that she received or signed the Arbitration Agreement. She further argues that under Kentucky law, "mere receipt of a document, if it exist[sic], is not enough to bound [sic] a party to the arbitration agreement."[7]

We begin our examination of the issue raised by setting forth the following general burden of proof that must be met by a party seeking to enforce an arbitration agreement in Kentucky:

> While there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky.2004). *A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ]to arbitrate*." *Id.*

*MHC Kenworth Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (emphasis added).

In the instant case, the record unequivocally contains a digitally signed copy of the Arbitration Agreement produced by petitioners during discovery before the circuit court. Thus, the burden shifted to respondent. Respondent argued that although the agreement was digitally signed it was not her signature, rather it was a "pre-stamped" signature. But the unrefuted evidence before the circuit court was that the only way the digital signature appears on the document was for respondent to have entered her password that she created into the portal that was emailed to her—

---

[6](...continued)
such act." 570 S.W.3d at 535. The issue of whether an arbitration agreement can be a condition of employment, however, was never raised by the parties in this appeal. Further, following the Kentucky Supreme Court's decision in *Snyder*, the Kentucky Legislature passed "Kentucky State Senate Bill 7, which amends KRS 336.700 and will apply both prospectively and retroactively, . . . [having been] signed into law on March 25, 2019. It effectively nullifies the Supreme Court's holding in *Northern Kentucky Area Dev. Dist. v. Snyder*." *Tassy v. Lindsay Entm't Enters., Inc.*, Civil Action No. 3:16-CV-00077-TBR, 2019 WL 1455797, at *6 (W.D. Ky. April 4, 2019).

[7]Respondent relies upon *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451 (Ky. 2009), to support her position that her assent to the arbitration agreement must be express and that mere acknowledgment of receipt of the document is insufficient. The Supreme Court of Kentucky in *Ernst & Young, LLP v. Clark*, 323 S.W.3d 682 (Ky. 2010), however, stated that "Ally Cat has no applicability to an arbitration agreement governed exclusively by the Federal Arbitration Act." *Id.* at 687 n.8. The case before us is similarly governed by the FAA and, thus, *Ally Cat* is not applicable.

7

a password that she testified she would not have shared with anyone else. Significantly, the digital signature found on the Arbitration Agreement complies with Kentucky's Uniform Electronic Transaction Act, Kentucky Revised Statute §§ 369.101 to -.120 (LexisNexis 2008 & Supp. 2018).[8] Contained within that act is Kentucky Revised Statute § 369.107, which provides:

> 1) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
> (2) *A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.*
> (3) If a law requires a record to be in writing, an electronic record satisfies the law.
> (4) *If a law requires a signature, an electronic signature satisfies the law*.

*Id.* (emphasis added). Consequently, contrary to the circuit court's finding that petitioners "cannot conclusively produce a signed agreement between parties," petitioners did produce a signed Arbitration Agreement and met their prima facie burden. It was respondent who failed to produce sufficient evidence to overcome it. The circuit court should have referred the case to arbitration and erred when it failed to so.[9]

### IV. Conclusion

For the foregoing reasons, the December 5, 2017, order entered by the Circuit Court of

---

[8]Similarly, this Court has recognized the validity of a digital or electronic signature in *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 232 W. Va. 432, 752 S.E.2d 586 (2013), wherein we stated that

> from a legal standpoint, electronic contracting is no different from contracting using tangible paper writings. "[A] contract cannot be denied enforcement solely because it is in electronic form or signed electronically." Juliet M. Moringiello and William L. Reynolds, *From Lord Coke to Internet Privacy: The Past, Present, and Future of the Law of Electronic Contracting*, 72 Md. L.Rev. 452, 460 (2013).

232 W. Va. at 440 and n.8, 752 S.E.2d at 594 and n.8 (providing in a footnote that West Virginia has also adopted the Uniform Electronic Transactions Act, W. Va. Code §§ 39A-1-1 to -17 (2014)).

[9]Because the case should have been referred to an arbitrator, it is for that arbitrator to resolve any remaining issues including whether the Arbitration Agreement is ambiguous and whether respondent's claims fall within the parameters of the parties' Arbitration Agreement.

Mingo County, denying petitioners' motion to enforce arbitration is reversed and the case is remanded for entry of an order referring the matter to arbitration.

Reversed and remanded.

ISSUED: June 3, 2019

**CONCURRED IN BY**:
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison